**FILED**

APR 11 2019

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA     )
                             )     No.  **19 CR  322**
          v.                 )
                             )     Violations: Title 18, United States
                             )     Code, Sections 666(a)(2), 1001(a)(2),
CHARLES CUI                  )     and 1952(a)(3)

**JUDGE DOW**
**MAGISTRATE JUDGE COLE**

## COUNT ONE

The SPECIAL DECEMBER 2017 GRAND JURY charges:

1.      At times material to this indictment:

### Relevant Entities and Individuals

        a.      The City of Chicago was a unit of local government known as a municipal
corporation, and a political subdivision of the State of Illinois.  The City of Chicago received in
excess of $10,000 in federal benefits during the period from April 1, 2017, through March 31, 2018.

        b.      The City of Chicago's legislative branch of government was the Chicago
City Council, which was comprised of fifty City Council members, each of whom represented one
of Chicago's fifty wards, and who were also known as Aldermen. The Aldermen were compensated
and publicly elected.

        c.      The City Council maintained a Committee on Finance, which exercised
broad powers pertaining to the City's finances. The Committee on Finance's powers included
making recommendations to the full City Council on whether to approve requests for tax increment
financing ("TIF").  TIF was a special funding tool used by the City of Chicago to promote public
and private investment across the City.  TIF funds were used, among other things, to put vacant

properties back to productive use, such as in conjunction with private development projects. Private individuals or entities seeking to obtain TIF funds in connection with their projects had to submit an application to the City of Chicago Department of Planning and Development for review. Applications were thereafter referred to the Committee on Finance for review, and if approved by the Committee on Finance, the application would be submitted to the full City Council for a vote.

        d.      Alderman A was Alderman of the Fourteenth Ward in Chicago and Chairman of the Committee on Finance. As Chairman of the Committee on Finance, Alderman A had authority over which matters would be considered by that Committee. Alderman A was an employee and agent of the City of Chicago, and was paid a salary by the City of Chicago.

        e.      Alderman A was admitted to practice law in Illinois and was the proprietor of a private law firm, Law Firm A, which specialized in contesting tax assessments made on real property and seeking reductions in such tax assessments for the firm's clients.

        f.      The City of Chicago Department of Buildings was an agency of the City of Chicago. The Department of Buildings issued building permits and sign permits in the City of Chicago.

        g.      The City of Chicago Department of Planning and Development was an agency of the City of Chicago. The Department of Planning and Development ensured that building permits complied with the Chicago Zoning Ordinance.

        h.      Defendant CHARLES CUI was the managing member of Company A, a limited liability company which owned the property located at 4901 West Irving Park Road in Chicago, Illinois (the "4901 Property"), which was located in an area outside of Alderman A's ward. CUI graduated from a law school located in Chicago, was admitted to practice law in Michigan, and operated his own law firm.

2

    i.   Company B was a retailer with multiple retail outlets in the Chicagoland area. Company B had contracted with Company A to operate a retail outlet at the 4901 Property.

    j.   Individual A was associated with a real estate consulting and project management firm in Chicago.

    k.   Individual B was a real estate attorney located in Park Ridge, Illinois.

<b>TIF Funding for the 4901 Property</b>

  2.  On or about February 10, 2016, an ordinance was submitted to the City Council seeking approval of a redevelopment agreement between the City of Chicago and Company A that provided for $2,000,000 in TIF funding for the redevelopment of the 4901 Property (the "Ordinance"). The Ordinance was referred to the Committee on Finance.

  3.  On or about March 11, 2016, the Committee on Finance, with Alderman A presiding, recommended that the Ordinance pass.

  4.  On or about March 16, 2016, on the motion of Alderman A, the City Council passed the Ordinance. Alderman A voted in favor of the Ordinance.

  5.  On or about June 28, 2016, the City of Chicago and Company A signed a redevelopment agreement for the 4901 Property, which gave Company A access to $2,000,000 in TIF funds for the redevelopment of the 4901 Property. These TIF funds were payable only after the conditions provided in the redevelopment agreement were met, and no TIF funds had been disbursed on or before September 5, 2017.

<b>Permit for the 4901 Property</b>

  6.  On or about April 17, 2017, CUI caused to be submitted to the Department of Buildings an application for a permit for an existing pole sign located at the 4901 Property. The application proposed that the sign would be used to advertise Company B.

3

7.    On or about May 18, 2017, the application for the permit was denied by the Department of Planning and Development.

8.    On or about July 21, 2017, CUI, on behalf of Company A, entered into an agreement with Company B that provided that, if Company A was unable to obtain the necessary approvals to allow Company B to use the pole sign at the 4901 Property, then Company A would reduce Company B's rent for the 4901 Property according to an agreed-upon formula. CUI estimated this rent reduction to have a total cost to Company A of $750,000.

9.    On or about August 23, 2017, at approximately 9:58 a.m., CUI sent an email to Alderman A, which stated, "Good Morning, [Alderman A]. I had the chance to meet you with [Individual A] couple of months ago. Hope you still remember me. I have a legal matter that may need your representation, if your schedule allows. I own a property located at 4901 W. Irving Park Road, which used to be a Bank of America building. My tenant [Company B] applied to reuse the existing pole sign in front of the building (see attached photo), but was denied by zoning, stating the pole sign was abandoned for several years, and now is illegal. Can you look into the matter, and advise how to proceed? [Company B] really needs it, otherwise they will either cancel the lease, or ask for significant rent reduction. It is such a beautiful sign, it is becoming a landmark for the community and it costs lots of money to remove it."

10.   On or about August 24, 2017, at approximately 11:59 a.m., CUI forwarded to Individual A the email he wrote to Alderman A on or about August 23, 2017, and further wrote, "fyi. I threw your name there. Maybe he [Alderman A] thinks there is conflict of interest, because of his position. I'll ask him to represent me for property tax appeal, which will be a big bite, comparing with this."

11. On or about August 24, 2017, at approximately 12:03 p.m., CUI sent an email to Individual B, who had represented CUI in property tax appeals for the 4901 Property. In that email, CUI wrote, "Can I ask you for a favor? Can I have [Alderman A] handle 4901 W. Irving Park property tax appeal for me, at least for this year? I have TIF deal going with the City, and he is the Chairman of Finance Committee. He handled [sic] his tax appeal business card to me, and I need his favor for my tif money. In addition, I need his help for my zoning etc for my project. He is a powerful broker in City Hall, and I need him now. I'll transfer the case back to you after this year."

12. On or about August 24, 2017, at approximately 12:17 p.m., CUI sent an email to Alderman A, that stated, "Dear [Alderman A], I currently have this property 4901, 4925, 4939 W. Irving Park Road under redevelopment. I may need your representation for tax appeal. The property was totally vacant till July this year. . . . . Please let me know if you have time to handle this matter for me. Please let me know when we can schedule a brief phone call. Thank you!"

13. On or about September 5, 2017, CUI signed a contingent fee agreement with Law Firm A that provided, among other things, CUI would retain Law Firm A to perform real estate tax work and pay Law Firm A a fee for its work, based on a specified percentage of any tax reduction obtained for CUI.

14. Between in or around August 2017 and continuing until in or around 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

CHARLES CUI,

defendant herein, corruptly offered and agreed to give things of value, namely, fees arising from the retention of Law Firm A, intending to influence and reward Alderman A, an agent of the City of Chicago, in connection with a business, transaction, and series of transactions of the City of

Chicago involving a thing of value of $5,000 or more, namely, a permit and tax increment financing concerning the 4901 Property;

In violation of Title 18, United States Code, Section 666(a)(2).

## COUNT TWO

The SPECIAL DECEMBER 2017 GRAND JURY further charges:

On or about August 24, 2017, at approximately 12:03 p.m., at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

CHARLES CUI,

defendant herein, caused the use of a facility in interstate commerce, namely, an electronic mail account and associated communication network operated by the service provider Yahoo!, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, namely, a violation of 720 ILCS 5/33-1 (Bribery), 720 ILCS 5/33-3(a)(4) (Official Misconduct), 720 ILCS 5/29A-1 (Commercial Bribery), and 720 ILCS 5/29A-2 (Commercial Bribe Receiving), and thereafter, the defendant did perform and attempt to perform an act to carry on and facilitate the promotion and carrying on of said unlawful activity;

In violation of Title 18, United States Code, Section 1952(a)(3).

## COUNT THREE

The SPECIAL DECEMBER 2017 GRAND JURY further charges:

On or about August 24, 2017, at approximately 12:17 p.m., at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

CHARLES CUI,

defendant herein, caused the use of a facility in interstate commerce, namely, an electronic mail account and associated communication network operated by the service provider Yahoo!, with intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment and carrying on of an unlawful activity, namely, a violation of 720 ILCS 5/33-1 (Bribery), 720 ILCS 5/33-3(a)(4) (Official Misconduct), 720 ILCS 5/29A-1 (Commercial Bribery), and 720 ILCS 5/29A-2 (Commercial Bribe Receiving), and thereafter, the defendant did perform and attempt to perform an act to carry on and facilitate the promotion and carrying on of said unlawful activity;

In violation of Title 18, United States Code, Section 1952(a)(3).

## **COUNT FOUR**

The SPECIAL DECEMBER 2017 GRAND JURY further charges:

1.      Paragraphs 1 through 13 of Count One of this indictment are incorporated here.

2.      Prior to on or about November 29, 2018, the Federal Bureau of Investigation had initiated an investigation of Alderman A and CUI concerning potential violations of federal criminal law.

3.      One issue material to the investigation was the reason why CUI offered to hire Alderman A as a tax appeal attorney in or around August 2017.

4.      On or about November 29, 2018, at Chicago, in the Northern District of Illinois, Eastern Division,

CHARLES CUI,

defendant herein, did knowingly and willfully make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency within the executive branch of the government of the United States, when he stated the following:

      i.      CUI had made no business offers to Alderman A during the pole signage matter;

      ii.     CUI offered business to Alderman A "just because he is a good tax appeal lawyer"; and

      iii.    The information CUI provided to federal agents during his interview was accurate to the best of his knowledge.

In violation of Title 18, United States Code, Section 1001(a)(2).


A TRUE BILL:


_____
FOREPERSON


_____
UNITED STATES ATTORNEY